PEOPLE *ex rel.* KEDIAN V. NEILSON.

*New York city — Board of Education not part of the city government — Statutory construction — Mandamus — comptroller and auditor of city not parties to proceedings by, upon claim against Board of Education.*

The Board of Education of the city of New York, prior to the amendment of the city charter in 1871 (Laws 1871, chap. 574), was never a department of the city government, but a separate organization, having its own separate funds, and empowered to draw money from the city treasury in accordance with special statutes; and by Laws 1873, chap. 112, it was again reconstructed as a distinctive educational branch of government, and not made a part of the city government. By Laws 1847, chap. 206, 1851, chap. 386, and 1866, chap. 264, moneys required for the purposes of the college of the city of New York were directed to be drawn from the treasury of the city only by the draft of the president of said board, countersigned by the clerk thereof. *Held*, that to proceedings by mandamus to compel the payment of a claim due for repairs made upon the college building the above-mentioned president and clerk were proper parties, but the auditor and the comptroller of the city of New York were not.

APPEAL by respondents from an order at special term directing the issue of a peremptory mandamus.

The proceedings were instituted upon the relation of James Kedian and another against William H. Neilson, president of the Board of Education of the city of New York and of the board of trustees of the college of the city of New York, and Abraham L. Earle, auditor, and Andrew H. Green, comptroller of the city of New York, to compel the said Neilson to draw a draft in favor of relators, or said Earle to audit the bills and accounts of relators, or said Green to draw his draft on the city chamberlain for their amount. The claim of relators was for services and materials furnished in making repairs upon the buildings of the College of the City of New York, under the direction

and authority of the trustees of said college. Sufficient material facts appear in the opinion and in the opinion delivered at special term. *

---

* The following is the opinion delivered at the special term :

DAVIS, J. The motion for mandamus should be granted. By the act of March 30, 1866, entitled "An act to erect the 'free academy of the city of New York' into a college," the College of the City of New York became a duly created corporation, with all the powers and privileges of a college under and pursuant to the Revised Statutes of this State.

The members of the Board of Education are made *ex officio* the trustees of said college, and are clothed with the powers conferred on, and are subject to the duties required of, the trustees of colleges by the Revised Statutes. The college, with all its powers and privileges, exists unaffected by the subsequent legislation touching the city government.

By the act of April 17, 1866, as amended by the act of May 1, 1872, the trustees of the college are annually required to report to the board of supervisors of the county of New York such sum, not exceeding $150,000, as they may require for the purposes specified in said acts. And the board are authorized and directed to collect such sum of money by tax, "to be in addition to the sums required for the purposes of common schools in the city of New York." In April, 1873, on the report of the trustees, the board of supervisors ordered $150,000 to be raised for the college, for the purposes specified in said several acts, which amount was collected and deposited in the city treasury.

The relators rendered the services in repairs to the college buildings and furnished the articles for the college, as set forth in their bills, between the 1st of January and the 1st of September, 1873; and no point is made but that the bills have been duly audited and approved by the executive committee of the trustees of the college.

The executive committee is authorized to be created by the sixth section of the act of May 7, 1847, authorizing the creation of the free academy, the provisions of which are continued in force by the act incorporating the college.

There can be, it seems to me, no doubt that the sum thus raised for the uses and purposes of the college is neither "city" nor "county" moneys, but a distinct and independent fund devoted to the support and maintenance of that institution, which cannot rightfully be diverted to any other use.

The act of 1847, section 4, provides that all moneys required to be raised by virtue of that act, on being raised, should be "deposited for the safe-keeping thereof in such place in said city as may be designated by the common council, to the credit of the said Board of Education," and should be drawn out only by draft of the president of said board, countersigned by the clerk, and payable to the order of the person or persons entitled to receive such money. This provision was in itself a clear declaration of the intent to devote the moneys named to the special and limited uses of the institution then known as the free academy. And so far as the same is applicable to the college, it is preserved by the third section of the act of incorporation. Laws of 1866, chap. 264.

The specific fund provided for by law having been raised and paid into the treasury of the city, persons whose right to payment out of that fund has been ascertained in the manner pointed out by law, are entitled to enforce such right by the writ of mandamus, because there is no other appropriate remedy to reach the particular fund. The city or county cannot be sued by the relators. All that the law enjoined upon them has been done by appropriating, raising and collecting the sum required. And no writ, if maintainable against the city or the college, would go any further than to establish the right and justice of the claim itself, as a general indebtedness, without affecting the question of the fund out of which the judgment should be paid. But in this case there is no need of a writ against the college. The debt is not only not disputed, but it has been ascertained and audited by its proper committee, so that it has become clearly payable out of the moneys raised and set apart to meet such demands. *People ex rel. Fiedler* v. *Mead*, 24 N. Y. 114, seems to be strongly in point. The only difficulty in the case is in determining to whom mandamus should be directed, where the fund is on deposit in the city treasury. The amended charter of 1873 embarrasses this question by its general provisions, that "the chamberlain shall pay all warrants drawn on the treasury by the comptroller and countersigned by the

People ex rel. Kedian v. Neilson.

*E. Delafield Smith,* for appellants.

*James W. Gerard,* for respondents.

LAWRENCE, J. I am in favor of affirming the order in this case so far as relates to the appellant Neilson, but I have with great reluctance been forced to the conclusion that the order below is erroneous so far as it relates to the appellants Green and Earle. In my opinion, neither Mr. Green nor Mr. Earle has any thing to do with the claim of the relators. At the time the bills of the relators were audited by the executive committee of the college, and approved by the trustees, the board of education was not a department of the municipal government of the city of New York, and the provisions of the charter of 1873, in reference to the payment of moneys from the city treasury, did not apply to that board. Laws 1873, chap. 335, art. 5.

The Board of Education, prior to the amendment to the charter

mayor, and no moneys shall be paid out of the treasury except on the warrant of the comptroller, so countersigned." "No such warrant shall be signed by the comptroller, or countersigned by the mayor, except upon vouchers for the expenditure of the amount named therein, examined and allowed by the auditor, approved by the comptroller and filed in the department of finance, except in the case of judgments, in which case a transcript thereof shall be filed, nor except such warrant shall be authorized by law or ordinance, and shall refer to the law or ordinance and to the appropriation under and from which it is drawn."

The safeguards here provided are so general in their character that it is difficult to hold that they are not applicable to all payments of moneys that are to be drawn for any purpose out of the treasury, no matter how specifically appropriated to a designated object the money may be.

It is safe not to seek for any exception to the general rule. When, therefore, the fund devoted to the college is shown to be deposited in the treasury of the city, the mode of reaching it as provided by former laws must be held to be modified by these general provisions of the charter in relation to all moneys. It is also the duty of the court so to modify and apply the remedy that it shall be effectual to accomplish the ends of justice.

In this case the relators pray for a mandamus directing the respondent Neilson, president of the board of trustees, to draw his draft for the amount of the bills audited in favor of the relators, and directing the respondent Earle to audit the said bills and draft, and respondent Green, as comptroller, to draw his warrant, etc.

The refusal of the comptroller to draw his warrant might have been based upon the absence of proper auditing by the auditor, and in that case that fact would perhaps be an answer to this application, but the question presented by the counsel for the respondents invokes no formalities or procedure. They raise only the broader general questions as to the rights and powers of the college, and the right of the relators to invoke the writ of mandamus in the case.

I think, therefore, a peremptory writ should be granted against the respondent Neilson, as president, etc., and against the auditor; and that the relators be at liberty if, after the draft of the president of the board of trustees has been drawn and presented, with the accounts, etc., and audited by the auditor, the comptroller, on presentation thereof, shall refuse his warrant, to apply on the footing of these proceedings, and proper proof of such presentation and refusal, for a writ to be issued to said comptroller.

*Ordered accordingly.*

of 1870 (Laws of 1870, chap. 137), passed in 1871 (Laws of 1871, chap. 574), had never been one of the departments of the city government, but had always been a separate organization, having its own separate funds, and empowered to draw money from the city treasury in accordance with the provisions of special statutes. Laws 1871, chap. 574, art. 15. See acts referred to in opinion of DAVIS, J., at special term; also, Davies' Laws, New York City, 1054, § 16.

By the act of March 21, 1873, the Board of Education was again reconstructed as a distinctive educational branch of government, and was not made a part of the general city government. Laws 1873, chap. 112. So, too, in the enumeration of the different depart-- ments of the city government contained in the charter, the Board of Education is omitted. Laws 1873, chap. 335, § 26.

The provisions relating to the drawing of moneys from the city treasury (Laws 1873, chap. 335, art. 5), only relate to departments and officers of the city government, as such, and do not, in my opinion, apply to this case, where, as is conceded by the court below and by the relators' counsel, the claim is neither against the city nor county.

The acts referred to in the opinion at special term, and other acts relating to the same subject, contemplate that moneys required for the purposes of the Board of Education or of the College of the City of New York should be drawn out from the treasury of the city only by the draft of the president of said board (of education), countersigned by the clerk of said board. Laws 1847, chap. 206 ; 1851, chap. 386; 1866, chap. 264 ; Davies' Laws of New York City, 1054, § 16.

The clerk of the Board of Education is not a party to this proceeding. He should have been made a party, and the mandamus should have been asked for against him as well as the president. The city auditor and comptroller were not, in my opinion, necessary or proper parties to the proceeding, and the provisions of the charter which are relied upon by their counsel do not seem to me to give to the one the right to audit nor to the other the right to draw a warrant for any claim arising out of an employment by the trustees of the college of the city of New York.

If it should be said that a portion of the relators' claim accrued while the Board of Education constituted a part of the city government, the obvious answer seems to me to be, that long before the

work had been completed the Board of Education had been reconstructed as a separate and distinct governmental agency, and that the provisions of the city charter did not, therefore, apply to any action which that board, acting as the trustees of the College of the city of New York, took subsequent to the passage of the new act, and that the auditing, satisfaction and approval of the relators' bills took place subsequent to the passage of said act. As it is admitted that the money has been raised, that the amount claimed by the relators is due, and that there is nothing but a technical objection to the payment of the relators, I think that the proper order in this case will be to affirm the order below so far as relates to the appellant Neilson, to reverse it as to the appellants Earle and Green, without costs, and with leave to the respondents to immediately apply to the court for a mandamus against the clerk of the Board of Education to compel him to countersign the draft of the president of the board, in case such clerk should refuse so to do.

*Ordered accordingly.*